OPINION
{¶ 1} This is an appeal from a judgment of the court of common pleas in favor of the defendants in an action to enjoin and/or vacate an annexation of land from Butler Township into the City of Union.
 {¶ 2} A petition to annex 640.542 acres of land from Butler Township into the City of Union was filed with the Board of Commissioners of Montgomery County on March 15, 2000. Thereafter, on March 22, 2000, the Union City Council enacted Ordinance No. 1182, identifying what public services Union would provide the new territory upon annexation.
 {¶ 3} On September 5, 2000, the Board of Commissioners, acting pursuant to R.C. 709.033, approved the petition. Per paragraph (E) of that section, the Board caused a certified transcript of its order to be delivered to Defendant-Appellee, Denise Winemiller, clerk of the City of Union, who received and filed the documents on September 6, 2000. Her act triggered the requirements of R.C. 709.04, which states, inter alia:
 {¶ 4} "At the next regular session of the legislative authority of the municipal corporation to which annexation is proposed, after the expiration of sixty days from the date of filing with him as required by section 709.033 of the Revised Code, the auditor or clerk of such municipal corporation shall lay the transcript and the accompanying map or plat and petition required by such section before the legislative authority. Thereupon the legislative authority, by resolution or ordinance, shall accept or reject the application for annexation."
 {¶ 5} By the terms of an ordinance the Union City Council had enacted several years earlier, its regular meetings were held on the second and fourth Mondays of each month. That schedule would allow the Council to adopt or reject the annexation petition, after the statutory sixty day period had passed, on November 13, 2000, at the earliest. However, on September 25, 2000, the Council by ordinance changed its "regular meeting" dates to the first and third Mondays of each month. Under that schedule, the Council could act on the petition at its regular meeting on November 6, 2000. It did, accepting the petition on that date through enactment of Ordinance No. 1204.
 {¶ 6} Union is a charter city. Pursuant to its charter, proposed ordinances are the subject of three readings. An exception is made for emergency ordinances, which may be voted upon at the first reading. Also per the charter, no ordinance prescribing the rates to be charged by a public utility may be enacted as an emergency ordinance. Further, and pursuant to other ordinances of the Council, notice of all meetings must be given to the news media, and a copy of proposed ordinances to be voted on must be posted at specified locations.
 {¶ 7} At about this same time a proposal to amend Union's city charter had been placed on the ballot for the voters' approval. The measure would require the City Council to first obtain approval by a majority vote of the city's electors before new territory could be added to the city by annexation. The election to decide the question was scheduled for Tuesday, November 7, 2000.
 {¶ 8} On November 3, 2000, an elector of the City of Union and the Butler Township Board of Trustees, Plaintiffs-Appellants herein, sought a temporary restraining order that would bar the Union City Council from acting on the annexation petition at its regular meeting on November 6, one day before the election. The request was denied. The Council then met on November 6 and accepted the annexation petition, declaring its action to be an emergency ordinance.
 {¶ 9} Plaintiffs-Appellants amended their complaint to ask the court to declare the City Council's emergency ordinance accepting the petition void, on several grounds. Defendant-Appellee, who is the clerk of council, filed a responsive pleading. A trial was held, after which the court entered judgment for Defendant. Plaintiffs filed a timely notice of appeal.
 First Assignment Of Error {¶ 10} "The Trial Court Erred In Finding Lawful A City Council's Change In Its `next Regular Meeting' Date, For The Purpose Of Circumventing The Requirement Of R.C. 709.04 That An Annexation Can Be Acted Upon Only At The Next Regular Meeting After The Expiration Of Sixty Days From The Date Of Receiving The County Commissioner's Annexation Papers."
 {¶ 11} No issue involving the acts of local government has been the subject of more litigation in recent years than the issue of annexation of unincorporated land into a municipality. Proponents and opponents have engaged in fierce and protracted battles.
 {¶ 12} On one side, favoring annexation, are developers and other property owners who perceive a benefit to be gained from access to municipal public services, which are usually more complete than those available in unincorporated areas. They are often joined by the municipality involved, which can expect to increase its tax base and revenue from addition of lands to its territory.
 {¶ 13} On the other side of the issue, opposing annexation, one generally finds the unincorporated areas from which the land is withdrawn, which are townships. They view annexation as diminishing their tax base and revenue as well as their political identity. These opponents are sometimes joined by persons within the municipality who don't wish to see its size expand. That appears to be the case here.
 {¶ 14} Plaintiffs-Appellants argue that the decision of the City Council to change the dates of its "regular meetings" was invalid because the motivation for that decision was to circumvent the sixty-day minimum time requirement of R.C. 709.04. The Council's purpose, according to Defendants-Appellants, was to avoid a prior approval of the amendment of the City Charter at the November 7, 2000 election. To do that, the Council contrived a way to put the annexation petition before Council for approval on November 6, 2000, one day before the election.
 {¶ 15} Seizing on the matter of the Council's motivation, Plaintiffs-Appellants draw an analogy to legislation that prohibits discrimination in employment, or discrimination on account of a disability or age, because of the individual's race, color, religion, sex, national origin, or particular disability. Those provisions prohibit the discriminatory conduct involved when it is motivated by a prohibited purpose. Thus, "motivation" is a necessary element of a violation and is a requirement of proof in order to find a violation.
 {¶ 16} The decision that the Council made to alter the schedule of its regular meeting may have been motivated by a purpose to avoid the effect of the November 7 vote on the proposed charter amendment; Plaintiffs-Appellants have presented evidence that suggests as much. However, such a motivation is not prohibited by law. Indeed, it is effectively beyond the control of the law, apart from some prohibited discriminatory effect, which is not present here.
 {¶ 17} "The wisdom and the policy of legislation, or the motives of members of the legislative tribunal, are not subject to review by the court." South Euclid v. Bilkey (1933), 126 Ohio St. 505, 507. "As long as [a] City Council's actions are entertained lawfully and the procedures required are followed, the motives of the members of the Council will not be questioned in the absence of a gross abuse of discretion or fraud."Bry v. City of Rocky River (April 1, 1976), Cuyahoga App. No. 34668, at p. 6, citing Bilkey.
 {¶ 18} Plaintiffs-Appellants don't claim that the Council's alteration of its regular meeting schedule was fraudulent or a gross abuse of discretion, or that the ordinance involved was unlawful or outside the Council's authority to enact. They simply claim that its political motivations were bad or perverse, at least in relation to Plaintiffs-Appellants' interests. That is not an issue which is subject to judicial review.
 {¶ 19} The first assignment of error is overruled.
 Second Assignment Of Error {¶ 20} "The Trial Court Erred In Holding That The City Council's Emergency Ordinance That Resulted In A Change In Public Utility Tap Fees For Certain Property Owners, By Changing The Fees To Zero, Was Not A Violation Of The City's Own Charter That Proscribes Ruling By Emergency On Rates And Charges By A Public Utility."
 {¶ 21} Section 2.06(h) of the Union City Charter states: "No ordinance prescribing rates and charges by a public utility . . . shall be passed as an emergency measure."
 {¶ 22} R.C. 709.33(B) states that, upon receiving notice from the board of county commissioners that an annexation petition has been filed with the county auditor, ". . . the municipal legislative authority shall, by ordinance or resolution, adopt a statement indicating what services, if any, the municipal corporation will provide to the territory proposed for annexation upon annexation."
 {¶ 23} Ordinance 1182 was adopted in compliance with R.C. 709.03(B). It describes a number of municipal services "which will be provided to the annexation area by the City upon annexation." Among those are water and sewer services. As to each the ordinance states that "tap-in fees have been waived for existing residential structures." Ordinarily, those fees are set at a minimum charge of six hundred dollars. Ordinance 1182 was adopted as an emergency measure.
 {¶ 24} Ordinance 1204, accepting the annexation petition, was also adopted as an emergency measure. Plaintiffs-Appellants argue that Ordinance 1204 operated to adopt the service provision measures of Ordinance 1182, and that as a result the provisions of Section 2.06(h) of the City Charter prohibiting emergency ordinances that prescribe utility rates were violated. Plaintiffs-Appellants point to the testimony of Union's city manager, John Applegate, who said that the services promised in Ordinance 1182 would not become effective until the City Council approves and accepts the annexation. (T. 42).
 {¶ 25} The trial court rejected Plaintiffs-Appellants' contentions. The court found that "Ordinance 1182 explained what services would be available" to the annexed property but "did not prescribe any rates or charges." (Decision, Entry, and Order, p. 5).
 {¶ 26} Ordinance 1182 describes a number of existing municipal services which will be extended to the land to be annexed if and when it is annexed. With respect to street maintenance services, the ordinance provides that emergency repairs and routine maintenance "will begin upon annexation." In contrast, the water and sewer service provisions state that tap-in fees "have been waived." Use of the past tense suggests that the change in applicable charges had been ordered in a different measure. The record doesn't reflect that fact, however. Therefore, we must accept the proposition that Ordinance 1182 operated to waive water and sewer tap-in fees, effective when Ordinance 1204 became effective. In that circumstance, Ordinance 1182 does prescribe utility rates, and therefore could not be enacted as an emergency ordinance per Section 2.06(h) of the City Charter. Even so, that does not affect Ordinance 1204, which was enacted independently of Ordinance 1182 and is unaffected by the defect in its adoption.
 {¶ 27} The second assignment of error is overruled.
 Third Assignment Of Error {¶ 28} "The Trial Court Erred In Holding That The City Clerk's Failure To Provide Media Notice Regarding An Upcoming City Council Meeting At Which An Annexation Was Accepted, As Required By The City Charter, Was Not A Violation Of The City's Charter Because There Was Some Notice To The Community."
 {¶ 29} Ordinances enacted by the Union City Council require notice of its regularly scheduled meetings to be furnished to the "news media" so that the public may be informed of upcoming business. The Clerk of Council is required to provide the notice and to certify that notice has been given. These provisions are in furtherance of R.C. 121.22(F), which requires public bodies to adopt "a reasonable method whereby any person may determine the time and places of all regularly scheduled meetings."
 {¶ 30} Plaintiffs-Appellants argue that the Council's clerk, Defendant-Appellee Winemiller, failed to comply with these provisions with respect to the Council meeting of September 25, 2000 at which it altered its "regular meeting" schedule. Winemiller didn't certify that she notified the news media, and couldn't recall whether she had. Notice of the meeting did appear in the Englewood Independent. Plaintiffs-Appellants contend that notice should also have been provided to the Dayton Daily News.
 {¶ 31} The Englewood Independent is a part of the "news media." Neither R.C. 121.22(F) nor the applicable ordinances require some other notice. The fact that Winemiller failed to certify that she gave notice is immaterial. The purposes of R.C. 121.22(F) and the applicable ordinances were clearly satisfied.
 {¶ 32} The third assignment of error is overruled.
 Fourth Assignment Of Error {¶ 33} "The Trial Court Erred In Holding That The Posting Of The Emergency Ordinance In Two Of The Five Places Required By City Ordinance Was `substantial Compliance' With The City's Own Notice Requirements."
 {¶ 34} The City Council had by prior ordinance provided that all proposed ordinances must be posted at five specific locations for fifteen days prior to taking effect. Proposed ordinance 1204 was posted at two of the described locations. Of the three remaining locations, two were addresses on South Main Street in Union that don't exist. The Clerk explained that the South Main Street designation was a "typo," and so the ordinances were posted at locations on North Main Street bearing the same street number. The fifth location was an unoccupied business where no posting had been made for twelve months, and proposed ordinance 1204 was not posted there either. The trial court found that the posting that occurred was in substantial compliance with the posting ordinance, and we agree. Plaintiffs-Appellants have not shown that they were prejudiced by the variances from the posting ordinance which took place.
 {¶ 35} The fourth assignment of error is overruled. The judgment of the trial court will be affirmed.
FAIN, P.J. and WOLFF, J., concur.